## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STUART ZAND, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>DIGITALGLOBE, INC., GENERAL HOWELL M. ESTES III, NICK S. CYPRUS, ROXANNE DECYK, LAWRENCE A. HOGUH, WARREN C. JENSON, L. ROGER MASON JR., JEFFREY R. TAR, KIMBERLY TILL, EDDY ZERVIGON,<br><br>          Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Stuart Zand ("Plaintiff"), by and through his undersigned counsel, brings this shareholder class action on behalf of himself and all other similarly situated public shareholders of DigitalGlobe, Inc., ("DigitalGlobe" or the "Company") against DigitalGlobe and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78n(a) and 78t(a) respectively, and Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between DigitalGlobe and MacDonald, Dettwiler and Associates Ltd. ("MDA").  Plaintiff alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.    On February 24, 2017, DigitalGlobe and MDA announced that they had reached a definitive Agreement and Plan of Merger ("Merger Agreement") under which MDA will acquire

all of the outstanding common stock of DigitalGlobe in exchange for $17.50 in cash and 0.3132 shares of MDA stock ("Proposed Transaction").  The total per share value of the proposed purportedly is $35.00 per DigitalGlobe share, based on the closing price of MDA's stock on February 16, 2017 ("Merger Consideration").  MDA also will assume DigitalGlobe debt of $1.2 billion.  The two companies claim the total deal is $2.4 billion (and an enterprise value of $3.6 billion).

2.      Plaintiff alleges that Defendants (defined below) violated Sections 14(a) and 20(a) of the Exchange Act and Rules and Regulations promulgated thereunder by causing a materially incomplete and misleading Form F-4 Registration Statement (the "F-4") (which contains a preliminary proxy statement for DigitalGlobe stockholders) filed with the SEC on April 27, 2017. The Board recommends that DigitalGlobe stockholders vote in favor of the Proposed Transaction, and agree to exchange their shares pursuant to the terms of the Merger Agreement based on, among other things, the factors examined by the Board to make its recommendation and solicit votes (including internal DigitalGlobe and MDA financial projections), and an opinion rendered by the Company's financial advisors, PJT Partners LP ("PJT Partners") and Barclays Capital Inc. ("Barclays").

3.      The Proposed Transaction was marred by a flawed process driven by certain conflicted members of DigitalGlobe's Board, who will receive windfall profits from equity compensation packages and cash outs.  In addition, certain members of the Board and management secured for themselves lucrative continuing employment with the surviving company.

4.      To ensure the success of the Proposed Transaction, the Board issued the F-4, which fails to provide shareholders with all material information necessary for them to assess the fairness of the Merger Consideration.  In particular, the F-4 fails to disclose or is misleading regarding the following: (i) the projections for DigitalGlobe, relied on by the Board and used by Barclays and

PJT Partners, in support of their fairness opinions; (ii) the financial analyses performed by Barclays and PJT; and (iii) potential conflicts of interest regarding the Board, Barclays and PJT Partners.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against DigitalGlobe and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to DigitalGlobe stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder and Section 20(a) of the Exchange Act.  17 C.F.R. §240.14a-9.

7.      This Court has personal jurisdiction over each Defendant either because the Defendant is an individual who is present in this District or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; and (ii) DigitalGlobe is formed in this District.

## PARTIES

9.      Plaintiff has, and continues to be, at all relevant times a stockholder of DigitalGlobe.

10.     DigitalGlobe is a corporation organized and existing under the laws of the State of

Delaware with its principal executive offices located at 1300 West 120th Avenue, Westminster Colorado 80234.  The Company is a provider of Earth imagery, data and analysis. trades on the NYSE under the symbol "DGI." DigitalGlobe is described on its website as follows:

> DigitalGlobe is the world's leading provider of high-resolution Earth imagery, data and analysis. With the most sophisticated commercial satellite constellation in orbit, we create the world's smartest images – giving customers the confidence to make the decisions that matter most. Customers everywhere rely on our best-in-class technology, global coverage and 16-year time-lapse image library to provide accurate, mission-critical information about our changing planet. By helping our customers solve their most difficult challenges, DigitalGlobe has become the trusted partner of dozens of industries worldwide – from environmental monitoring and mapmaking to defense and public safety.

11.    Defendant General Howell M. Estes III ("Estes") has served as a director of DigitalGlobe since 2007 and as Chairman of the Board since February 2011.

12.    Defendant Nick S. Cyprus ("Cyprus") has served as a director of DigitalGlobe since June 2009.

13.    Defendant Roxanne Decyk ("Decyk") has served as a director of DigitalGlobe since July 2014.

14.    Defendant Lawrence A. Hough ("Hough") has served as a director of DigitalGlobe since January 2013.

15.    Defendant Warren C. Jenson ("Jenson") has served as a director of DigitalGlobe since 2008.

16.    Defendant L. Roger Mason, Jr. ("Mason") has served as a director of DigitalGlobe since October 2015.

17.    Defendant Jeffrey R. Tarr ("Tarr") has served as a director of DigitalGlobe since 2011. Tarr also serves the Company's President and Chief Executive Officer ("CEO").

18.    Defendant Kimberly Till ("Till") has served as a director of DigitalGlobe since October 2010.

4

19.     Defendant Eddy Zervigon ("Zervigon") has served as a director of DigitalGlobe since March 2014.

20.     Defendants Estes, Cyprus, Decyk, Hough, Jenson, Mason, Tarr, Till and Zervigon are collectively referred to as the "Board" or the "Director Defendants."  The Board and DigitalGlobe may collectively be referred to as "Defendants." Each of the Director Defendants herein is sued individually, and as an aider and abettor, as well as in his or her capacity as an officer and/or director of the Company, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this Action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public stockholders of DigitalGlobe (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable. As of February 22, 2017, there were approximately 61,755,437 outstanding stocks of DigitalGlobe common stock.   All members of the Class may be identified from records maintained by DigitalGlobe or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

24.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the F-4 in violation of Section 14(a) of the Exchange Act and SEC Rules and Regulations including Rule 14a-9; (ii) whether the Director Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer

irreparable harm if compelled to vote their stocks regarding the Proposed Transaction based on the false and/or misleading F-4.

25.     Plaintiff is committed to prosecuting this action and have retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class, Plaintiff have the same interests as the other members of the Class, and Plaintiff do not have any interests that are adverse to the Class. Accordingly, Plaintiff is adequate representatives of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

28.     DigitalGlobe is a provider of Earth imagery, data and analysis. The Company's imagery solutions and other services support a range of uses, including mission-planning, mapping and analysis, environmental monitoring, oil and gas exploration and infrastructure management. The Company's imagery solutions and other services are sourced from its own satellite constellation and third-party providers. [1]

---

[1]     http://www.reuters.com/finance/stocks/companyProfile?symbol=DGI

A.     **The Proposed Transaction**

29.     On February 24, 2017, DigitalGlobe and MDA issued a joint press release

announcing the Proposed Transaction, which states in pertinent part:

> SAN FRANCISCO and WESTMINSTER, Colo. – February 24, 2017 –
> MacDonald, Dettwiler and Associates Ltd. ("MDA") (TSX: MDA), a global
> communications and information company providing technology solutions to
> commercial and government organizations worldwide, and DigitalGlobe, Inc.
> ("DigitalGlobe") (NYSE: DGI), the global leader in Earth imagery and information
> about our changing planet, today announced they have entered into a definitive
> merger agreement, pursuant to which MDA will acquire DigitalGlobe for
> US$35.00 per share in a combination of cash and stock. The transaction values
> DigitalGlobe at an equity value of approximately C$3.1 billion (US$2.4 billion),
> and an enterprise value of C$4.7 billion (US$3.6 billion), including assumption of
> DigitalGlobe's C$1.6 billion (US$1.2 billion) in net debt. The transaction has been
> unanimously approved by the boards of directors of both companies, and is
> expected to close in the second half of 2017.
>
> Under the terms of the agreement, each DigitalGlobe common share will be
> exchanged for US$17.50 in cash and 0.3132 MDA common shares, representing a
> per share value of US$17.50 based on MDA's unaffected closing share price of
> C$73.40 on the Toronto Stock Exchange (TSX) on February 16, 2017, the day prior
> to market speculation about a potential combination, and a C$/US$ exchange ratio
> of 0.7612. The total cash and stock per share value consideration represents an 18%
> premium based on DigitalGlobe's unaffected closing stock price on the New York
> Stock Exchange (NYSE) on February 16, 2017.
>
> The combination will bring together complementary space-related capabilities,
> creating a stronger company uniquely positioned to capture growth in the U.S.,
> Canadian and global Earth observation and geospatial services markets given its
> ability to provide complete, end-to-end space systems, earth imagery and geospatial
> solutions. Together, the combination will leverage a full suite of space-related
> capabilities, including communications and Earth observation satellites and
> robotics, ground stations, integrated electro-optical and radar imagery, and
> advanced data analytics. Additionally, the combined company will lead in cloud-
> based information services that allow commercial and government customers
> worldwide to better understand activity across the changing planet.
>
> As part of the transaction, MDA will apply to list its shares on the NYSE in addition
> to the TSX. Upon completion of the transaction, the combined Company will
> continue to execute its U.S. Access Plan strategy. This will include further
> reorganization of all or part of the combined Company's corporate and operating
> structure to ensure that the ultimate parent of DigitalGlobe is incorporated in the
> U.S. by the end of 2019, subject to customary approvals. MDA undertook a
> corporate reorganization in 2016 that included the formation of SSL MDA
> Holdings, Inc. ("SSL MDA Holdings"), the U.S. Operating Company of MDA,

under the guidance and approval of the U.S. Department of Defense (DoD). SSL MDA Holdings currently operates under a Security Control Agreement (SCA) with DoD, allowing it to pursue and execute U.S. Government programs that require security clearances. "

Today's announcement creates a new company that will lead the industry, offering space systems and imaging solutions from inception to execution, able to make design decisions with our customer's needs in mind," said Howard L. Lance, president and chief executive officer of MDA. "This combination has the scale, resources and technology to serve the large and increasingly complex needs of government and commercial customers globally. By combining MDA and DigitalGlobe, we are significantly expanding our total addressable market by broadening both companies' capabilities and facilitating future growth."

Lance continued, "MDA remains fully committed to its enduring and valued partnership with the Canadian Government and our Canadian employees. This combination offers the opportunity to deliver future economic and job growth in both Canada and the United States, as we focus on driving sustainable revenue expansion from our investments and create value for all our stakeholders."

Lance further stated, "The transaction is a major step forward in our previously announced U.S. Access Plan. We are committed to serving the U.S. Government as a mission-critical partner with an expanded portfolio of end-to-end solutions. DigitalGlobe will operate as a stand-alone division under SSL MDA Holdings, in the same way as SSL and MDA's Canadian businesses."

Jeffrey R. Tarr, president and chief executive officer of DigitalGlobe, said, "Following a thorough review of strategic alternatives, we believe that joining forces with MDA will enable us to deliver more value to our customers, expand opportunities for our team members and maximize value for shareowners. This compelling transaction will deliver immediate cash value to shareowners with further upside through ownership in the combined entity, position DigitalGlobe to reach its next phase of growth and provide greater opportunities for our team members by being part of a larger, more diversified company."

Tarr continued, "Upon completing the transaction, DigitalGlobe will accelerate our vision of being the leading source of information about our changing planet. We look forward to working with the MDA team to ensure a seamless transition and to realize the potential of this exciting combination."

[…]

Mr. Lance, president and chief executive officer of MDA and president and chief executive officer of SSL MDA Holdings, will lead the combined company. Mr. Lance's extensive experience in the global aerospace, defense and security markets will help guide and inform the transition and will position the combined company to capture growing demand for end-to-end space systems solutions. The DigitalGlobe name, brand and headquarters in Westminster will be maintained. In

addition, three of DigitalGlobe's current directors will be appointed to the MDA Board of Directors. The combined company will have approximately 4,600 employees in the United States and will continue to employ more than 1,800 in Canada.

[…]

PJT Partners and Barclays are serving as financial advisors, and O'Melveny & Myers LLP is serving as legal counsel, to DigitalGlobe. PJT Partners and Barclays provided fairness opinions to DigitalGlobe.[2]

**B.**     **The Proposed Transaction Undervalues DigitalGlobe's Shares**

30.     As noted above, pursuant to the terms of the Merger Agreement, DigitalGlobe stockholders will receive only $17.50 in cash and 0.3132 MDA common shares for each share of DigitalGlobe that they own, which, based on the closing price of MDA common stock on February 16, 2017. This consideration is inadequate, undervalues the Company and does not adequately compensate DigitalGlobe stockholders for their loss of control.

31.     DigitalGlobe's successful operations in 2016 bolster this conclusion.   The Company successfully launched WorldView-4 on November 11, 2016 and completed the combination with Radiant Group, a leading provider of geospatial solutions to the U.S. intelligence community.   The Company signed Environmental Systems Research Institute, Inc. and Harris Corporation as ecosystem partners, who joined an already robust list of development partners and customers including Facebook, Orbital Insight, SpaceKnow, PSMA, Lockheed Martin and PrecisionHawk.

32.     The Company also refinanced outstanding debt by entering into a new credit facility in December 2016, and extinguished $600 million in aggregate principal amount of outstanding 5.25% senior notes through a tender offer and subsequent redemption completed in January 2017.

---

[2]     http://investor.digitalglobe.com/phoenix.zhtml?c=70788&p=RssLanding&cat=news&id=2249168

33.     DigitalGlobe issued a press release on February 24, 2017, in which they reported financial results for the full year of 2016.  They reported that U.S. Government revenue grew by 3.3%, driven by the addition of The Radiant Group and an increase in value-added services revenue.  The Company also reported a growth in Diversified Commercial revenue by 3.3%. Additionally, net income grew 13.7% to $26.5 million and adjusted EBITDA grew 7.6% to $382.7 million.  Defendant Tarr extolled the Company's financial results:

> We wrapped up a solid year on a high note with our successful launch of WorldView-4 and the completion of the Radiant Group transaction. . . . Our improved results reflect solid execution against our strategy for shareowner value creation and position us well for 2017. We look forward to continued profitable growth as we expand our International Defense and Intelligence business with assured access to our newest high resolution satellite, develop new commercial use cases, expand our rapidly growing geospatial big data analytics platform, and realize the full potential of our services business with the addition of Radiant.

34.     On a February 27, 2017, earnings call with investors the Company's Chief Financial Officer, Gary Ferrara also commented on the Company's financial results:

> Revenue slightly exceeded the guidance range due to stronger performance than anticipated in our other diversified commercial business and the direct access program business certain direct customers continue to spend above their contractual minimum throughout the year as we did in 2015….CapEx spending, excluding capitalized interests was $136.4 million. This compares with our revised guidance of approximately $135 million. We generated $109.6 million of free cash flow for the year, a 15.1% free cash flow margin.

35.     Accordingly, it appears that the Merger Consideration offered to DigitalGlobe's public stockholders in the Proposed Transaction is unfair and inadequate because, among other things, the intrinsic value of the Company's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's recent financial performance and prospects for future growth and earnings.  If consummated, the Proposed Transaction will deny Class members their right to fully share equitably in the true value of the Company.

36.     It is therefore imperative that DigitalGlobe's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the F-4, so that they can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

## C.     The Incomplete and Materially Misleading F-4.

37.     On April 24, 2017, Defendants caused to be filed the false and/or misleading F-4 with the SEC in connection with the Proposed Transaction.  The F-4 contains the proposed proxy statement for DigitalGlobe's stockholders with Board's recommendation and solicitation of the Company's stockholders to vote in favor of the Proposed Transaction and is signed by one or more of the Director Defendants.

38.     The F-4 misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction in violation of Sections 14(a) and 20(a) of the Exchange Act and rules promulgated thereunder.  Specifically, the F-4 fails to provide the Company's stockholders with material information concerning the process leading up to the consummation of the Proposed Transaction and information concerning the financial analyses and work performed by Barclays and PJT.  As a result of the incomplete and misleading F-4, the Company's stockholders will be unable to make an informed decision concerning whether to vote for or against the Merger.

***The Materially Incomplete and Misleading Information Concerning the DigitalGlobe and MDA Financial Forecasts***

39.     Defendants disclosed the "Certain Unaudited Prospective Financial Information Used by the DigitalGlobe Board of Directors and DigitalGlobe's Financial Advisors" (F-4, 105-109), that were expressly relied on by the Board to recommend the Proposed Transaction and solicit stockholders to vote in favor of the Proposed Transaction.  For example, DigitalGlobe disclosed that the solicitation of stockholder votes is based on: (i) "current information regarding

(a) DigitalGlobe's business, prospects, financial condition, operations, technology, products, services, management, competitive position, contract and customer business concentration levels, capital intensity and returns and strategic business goals and objectives, (b) DigitalGlobe's capital expenditure budget and plans for building and deploying its next satellite constellation, (c) general economic, industry and financial market conditions, and (d) opportunities and competitive factors within DigitalGlobe's industry" (F-4, 79) and (ii) "… current information regarding MDA's business, prospects, financial condition, operations, technology, products, services, management and competitive position;" F-4, 80. But the above information that was relied on by the Board either was not disclosed or the information that is disclosed is misleading.

40.    Specifically, the Company's management prepared three scenarios of financial forecasts of specific metrics for the Board to consider when deciding to approve the Proposed Transaction.  The F-4 discloses that for the three different set of Company forecasts, the "Scenario 2" and "Scenario 3" forecast are based upon the same key assumptions as those for "Scenario 1" forecasts.  However, the F-4 omits the following key line items: (i) interest; (ii) tax expense; (iii) depreciation and amortization; (iv) changes in working capital; (v) deferred revenue; (vi) deferred contract costs and other operating activities; and (vii) other cash flow items (F-4, 105-109). The disclosure of these projected line items is particularly important for stockholders, because Defendants have reconciled the Company's non-GAAP financial measures with GAAP financial measure, as generally required by Regulation G, only for the year 2017.  As the Company almost exclusively utilizes internally generated non-GAAP measure to report to the public, it is imperative (and Plaintiff alleges mandated under Regulation G), to disclose all projected line items created by management, relied on by Board, and utilized by Barclays and PJT Partners.

41.    Moreover, while the Company claims that it is exempt from the mandate under Regulation G to reconcile all the non-GAAP financial measures on which the Board relied for

years 2018 through 2021 due to the "unreasonable effort" exemption, Defendants have offered only conclusory assertions to invoke this exemption (e.g., ". . . the nature of DigitalGlobe's assets under construction during the applicable period, the timing and amount of capital expenditures and the timing of placing assets in service . . ."  Such vague and conclusory statements do not satisfy the requirements under SEC regulations that prohibit such conclusory assertions (see e.g., 17 C.F.R. §229.1012(a)-(b).  Defendants must disclose the reconciled metrics for 2018-2021, the specific reasons for failing to reconcile the non-GAAP financial measures with GAAP measures and/or if the Board examined the GAAP equivalent financial measures for 2018-2021 when recommending the Proposed Transaction.

42.     The F-4 recognizes that DigitalGlobe's projections are non-GAAP compliant and should not be considered in isolation from, or as a substitute for, financial information presented in accordance with GAAP.  Importantly, the corresponding GAAP equivalent financial metrics are not disclosed for the years 2018-2021.

43.     The SEC requires the disclosure of certain information not within an exception in solicitation materials.  Thus, when a company discloses certain material information in an F-4 that includes non-GAAP financial measures, the company must also disclose that non-GAAP financial measure along with comparable GAAP measures and a quantitative reconciliation of forward-looking information.  17 C.F.R. § 244.100.

44.     Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chair, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as DigitalGlobe has included in the F-4 here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors,

crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors.  And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[3]

45.     Over the past year, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heighted its scrutiny of the use of such projections.[4]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.  The above-referenced line item projections that have been omitted from the F-4 are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

---

[3]     *See* Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), www.sec.gov/news/speech/chair-white-icgn-speech.html #_ftnref38 (emphasis added) (footnotes omitted).

[4]     *See, e.g*., Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

***The Materially Incomplete and Misleading Information Concerning the PJT and Barclays
Valuation Analyses***

46.     As alleged above, critical material information regarding DigitalGlobe's
projections was omitted from the F-4, rendering the respective summaries of PJT's and Barclays'
fairness opinions, which was approved and adopted by Defendants, misleading.

47.     In rendering its fairness opinion and applying the various valuation methodologies,
PJT Partners made certain assumptions, in consultation with DigitalGlobe and MDA management,
with respect to industry performance, general business and internal economic conditions and other
matters, none of which were disclosed (F-4, 83-84). The failure to disclose these assumptions
renders the summary of the fairness opinion and the results of the valuation methodologies, which
relied on and incorporated the assumptions, misleading.

48.     PJT Partners' *Discounted Cash Flow Analysis-Digital Globe* in the F-4 fails to
disclose the following material information:  (i) the terminal value ranges for the Company as of
December 31, 2021, and (ii) the rationale for applying perpetuity growth rates of 1.5%-2.5%. (F-
4, 88).  PJT Partners *Discounted Cash Flow Analysis-MDA* in the F-4 fails to disclose the following
material information: (i) the terminal value ranges for MDA as of December 31, 2021, and (ii) the
estimated net debt as of December 31, 2013. (F-4, 89-90)

49.     PJT Partners' *Discounted Equity Value Analysis* for both DigitalGlobe and MDA
in the F-4 fails to disclose the estimated net debt as of December 31, 2020.  (F-4, 90-91.)

50.     The failure to disclose this information renders the summary of PJT Partners'
*Discounted Cash Flow Analysis* and *Discounted Equity Value Analysis* for both companies
misleading.

51.     In rendering its fairness opinion and applying the various valuation methodologies,
Barclays made certain assumptions, in consultation with DigitalGlobe and MDA management,
with respect to industry performance, general business and internal economic conditions and other

matters, none of which were disclosed (F-4, 94-95). The failure to disclose these assumptions renders the summary of the fairness opinion and the results of the valuation methodologies, which relied on and incorporated the assumptions, misleading.

52. Barclays' *Discounted Cash Flow Analysis-Digital Globe* in the F-4 fails to disclose the following material information: (i) the terminal value ranges of DigitalGlobe as of December 31, 2021; (ii) the rationale for applying perpetuity growth rates of 1.5%-2.5%; and (iii) the estimated net debt as of December 31, 2016. (F-4, 100-101). Barclays' *Discounted Cash Flow Analysis-MDA* fails to disclose the following material information: (i) the terminal value ranges of MDA as of December 31, 2021; and (ii) the estimated net debt as of December 31, 2016. (F-4, 101-102). The omission of this material information renders the summary of Barclays' *Discounted Cash Flow Analysis* for both companies misleading.

**Conflicts of Interest Amongst Directors and Financial Advisors**

53. The F-4 fails to provide material information concerning the process conducted by the Board and the events leading up to the signing of the Merger Agreement.

54. Specifically, the F-4 fails to disclose the details regarding the future directorship and continued employment of Director Defendants Estes, Mason, and Cyprus. While the F-4 is clear that they will enjoy future board positions, the details behind those decisions and the preceding events are not disclosed. In particular, the F-4 fails to disclose if or when during the negotiations with MDA, their (and other directors and/or officers) future employment and compensation was discussed. If future employment and compensation were negotiated and agreed even informally prior to entering into the Merger Agreement, then their involvement in the negotiation of the Proposed Transaction was tainted, their interests were in direct conflict with the interest of DigitalGlobe stockholders to whom they owed fiduciary duties, and this information must be disclosed prior to the stockholder vote on the Proposed Transaction

55.     As many of the Director Defendants are responsible for nominating the future directors, this information is material to stockholders. Stockholders must be apprised of any potential conflicts of interest amongst management and the Board; the appearance of impropriety suggests that the Director Defendants are not acting exclusively in the best interests of the Company's stockholders. The failure to disclose this information renders the F-4 false and/or misleading (including the "Background of the Merger," "DigitalGlobe's Reasons for the Merger," and the "Recommendation of the DigitalGlobe Board of Directors").

56.     The F-4 fails to disclose material information regarding potential conflicts of interest amongst PJT and Barclays.

57.     The F-4 fails to disclose: (i) whether PJT Partners has provided services to MDA or its affiliates in the past two years; and (ii) whether Barclays has provided services to MDA or its affiliates in the past two years.  (F-4, 94, 104).

58.     The aforementioned misrepresentations and omissions renders the F-4 false and misleading, as it is material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT I

### Against DigitalGlobe and the Director Defendants for
### Violations of Section 14(a) of the Securities Exchange Act of 1934

60.     Plaintiff incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

61.    SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.    During the relevant period, Defendants disseminated the false and misleading F-4 statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

63.    By virtue of their positions within the Company, the Director Defendants were aware of this information and of their duty to disclose this information in the F-4.  The F-4 was prepared, reviewed, and/or disseminated by the Director Defendants.  The F-4 misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets.  Defendants were at least negligent in filing the F-4 with these materially false and misleading statements. Defendants have also failed to correct the F-4; the failure to update and correct false statements is also a violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

64.    The omissions and false and misleading statements in the F-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the F-4 and in other information reasonably available to stockholders.

65.    By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9(a) promulgated thereunder.

66.    Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

67.    Because of the false and misleading statements in the F-4, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## COUNT II

### Against the Director Defendants
### for Violations of Section 20(a) of the Securities Exchange Act of 1934

68.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.    The Director Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the F-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

70.    Each of the Director Defendants was provided with or had unlimited access to copies of the F-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

71.    In particular, each of the Director Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, each of the Director Defendants is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The F-4 at issue contains the unanimous recommendation of each of the Director Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

72.     In addition, as the F-4 sets forth at length, and as described herein, the Director Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The F-4 purports to describe the various issues and information that they reviewed and considered — descriptions that had input from the Director Defendants.

73.     By virtue of the foregoing, the Director Defendants have violated Section 20(a) of the Exchange Act.

74.     Because of the false and misleading statements in the F-4, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure the Director Defendants' misconduct is corrected.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the F-4;

C.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.      Directing Defendants to account to Plaintiff and the Class for damages sustained

because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for

Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  May 22, 2017

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

**FARUQI & FARUQI, LLP**

By:  */s/ Michael Van Gorder*
Michael Van Gorder (#6214)
20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*